UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

FILED
2005 DEC 23 P 4:29
CLERK, US DIST. COURT
           OF TEXAS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. |
| | ) |
| 21.945 Acres, More or Less, out of the | ) SA05CA1229 FB |
| H.&T.C.R.R. Company, Section 12, | ) |
| Guadalupe County, Texas, | ) |
| | ) |
| Respondent. | ) |

## VERIFIED COMPLAINT FOR FORFEITURE

Comes now the Petitioner United States of America, acting by and through the United States Attorney for the Western District of Texas and the undersigned Assistant United States Attorney, and respectfully states as follows:

### I.
### JURISDICTION

The Court has jurisdiction of this action under Title 28 United States Code (U.S.C.) §§ 1345, 1355, and 2461. This *in rem* action is brought under Title 18 U.S.C. §§ 981 and 985.

### II.
### VENUE

The Court has venue of this action under Title 18 U.S.C. § 981 and Title 28 U.S.C. § 1395. The Respondent Property is real property situated in Guadalupe County, Texas. Pursuant to Title 28 U.S.C. §§ 1355(b) and 1355(d), jurisdiction over the Respondent Property is proper in the United States District Court for the Western District of Texas, San Antonio Division, San Antonio, Texas.

## III.
## DESCRIPTION OF RESPONDENT PROPERTY

The Respondent Property is situated in Guadalupe County, Texas, together with all buildings, appurtenances, and improvements thereon and any and all surface and sub-surface rights, title, and interests, if any, and being more particularly described as follows:

> **Being 21.945 Acres out of the H.&T.C.R.R. Company, Section 12, Guadalupe County, Texas, with all buildings, appurtenances and improvements thereon and any and all surface and sub-surface rights, title and interests, if any.**

The above-described Respondent Property is described in a General Warranty Deed by and between Bobby J. Smoot and Maidlen Smoot (Grantors) to Ignacio R. Torres and Leonor L. Torres (Grantees), recorded in the Real Property Records of Guadalupe County, Texas, at Volume 1891, Page 412. The above-described real estate is hereinafter referred to as the "Respondent Property."

## IV.
## NAMES OF TITLED OWNER(S) OF RESPONDENT PROPERTY

Ignacio Torres and wife Leonor L. Torres are the titled owners of the Respondent Property.

## V.
## LIENS, ENCUMBRANCES, AND RESTRICTIONS
## AGAINST RESPONDENT PROPERTY

There are no recorded liens against the Respondent Property at this time.

## VI.
## VALUE OF RESPONDENT PROPERTY

According to the tax records of Guadalupe County, Texas, the appraised value of the Respondent Property was approximately $21,945.00.

## VII.
## VIOLATIONS

This is a civil action *in rem* brought to enforce the provisions of Title 18 U.S.C. §§ 981 and

985, for violations of Title 18 U.S.C. §§ 201, 371, 1341, 1343, 1956 and 1957, for the forfeiture of the Respondent Property.

## VIII.
## BURDEN OF PROOF

At trial, the United States of America will establish by a preponderance of the evidence that the Respondent Property is subject to forfeiture and should be forfeited to the United States of America as alleged in the Verified Complaint for Forfeiture. (18 U.S.C. 983(c))

## IX.
## FACTS PERTINENT TO VIOLATIONS

Special Agents of The Federal Bureau of Investigation (FBI), in conjunction with other federal law enforcement agencies which include the Internal Revenue Service (IRS), the United States Army Criminal Investigations Command (CID), Major Procurement Fraud Unit (MPFU), the United States General Services Administration (GSA), Office of Inspector General (OIG), the United States Department of Defense (DOD), Defense of Criminal Investigative Service (DCIS), the Department of Interior (DOI), the Small Business Administration (SBA), and the Department of Transportation (DOT) conducted an investigation into the information technology contracts issued by the United States Army Medical Department (AMEDD)[1]. The investigation revealed that fraud was being committed against the government by means of bid rigging, bribery, kickbacks and money laundering. The scheme began about 2002. The conspirators, including Ignacio Torres (Torres), have been identified by a Confidential Witness (CW). A number of the conspirators have served in

---

[1] U.S. Army Medical Department (AMEDD) is a department of the Army responsible for providing medical care to soldiers and their families throughout the world. The responsibilities of AMEDD are directed and executed through the U.S. Army Medical Command (MEDCOM). The U.S. Army Medical Information Systems and Services Agency (USAMISSA) was a sub-unit of MEDCOM. Their stated mission was to: "Develop, deploy and sustain MEDCOM Enterprise IT systems." In October, 2003, USAMISSA changed its name to the U.S. Army Medical Information Technology Center (USAMITC).

the armed services and have been employed at AMEDD, at some point in time.

The scheme began about 2002, when Ignacio Torres and others engaged in business relationships and formed "pass through" companies that manipulated the contract bidding process regarding the award of government technology contracts. According to the CW, confidential government bid and proposal information, as well as source selection information and competitors bids were disclosed to conspirators for the purpose of fixing bids, and fixing the contract awards. Contracts were formulated by the co-conspirators working at AMEDD, in such manner as to require the selection of "sole-source" contractors who would act in concert with the other co-conspirators. Bids and the awarding of contracts were fixed by the conspirators. The contacts were also formulated by the conspirators in such manner as to facilitate modifications which resulted in increasing the value of the contract. The conspirators manipulated and bribed holders of SBA Section 8(a) and Small Disadvantaged Businesses[2] to facilitate the scheme to defraud.

Ignacio Torres was employed with U.S. Army Medical Command (MEDCOM)[3] as an

---

[2] U.S. Small Business Administration (SBA) is an agency of the U.S. government mandated to assist and protect the interests of small business. SBA is also mandated to ensure that small business receive a fair proportion of government contracts ans sales of surplus property.

SBA administers the 8(a) Business Development Program (the 8(a) program) and the Small Disadvantaged Business Certification Program (SDB). The 8(a) program offers assistance to socially and economically disadvantaged firms. SDB certification strictly pertains to benefits in Federal procurement. Companies which are 8(a) firms automatically qualify for SDB certification.

8(a) participation is divided into two phases over nine years: a four year developmental stage and a five-year transition stage. Participants can receive sole-source contracts up to a ceiling of $3 million for goods and services and $5 million for manufacturing Federal acquisition policies encourage federal agencies to award a certain percentage of their contracts to SDBs. To speed up the award process, the SBA has signed Memorandums of Understanding (MOUs) with 25 federal agencies allowing them to contract directly with certified 8(a) firms.

Eligibility Requirements: To qualify for the 8(a) program, a small business must be owned and controlled by a socially and economically disadvantaged individual. Under the Small Business Act, groups presumed to be disadvantaged include African Americans, Hispanic Americans, Asian Pacific Americans, Native Americans, and Subcontinent Asian Americans.

[3] A review by Affiant and other Agents participating in this investigation reveals that there were 13 invoices submitted by COMTEK to GSA in relation to this task order. The first invoice (dated August 22, 2002) listed "Material" under the description section of the invoice. The remaining 12 invoices listed "Service(s) for Labor" under the description section of the

Infrastructure Coordinator/Project Officer. His primary role was to coordinate infrastructure projects involving United States Army hospitals with other business entities. Specifically, Torres used his position to further the illegal scheme by providing confidential and inside information to his co-conspirators regarding specific government contracts, as well as manipulate the bidding process in order to assure that specific contracts would be awarded to the co-conspirators companies. Some of the companies owned or controlled by the co-conspirators included Communications Technologies Incorporated a/k/a Comtek, Sphinx Consulting & Associates (SC&A), PRO-ECA, DSS Services, Inc., and Enterprise Consulting Agency. After the bids were awarded, Torres would create invoices and bill for his share of the proceeds. In an effort to conceal his illegal activity, Torres began receiving payments for his role through checks made payable to his wife Leonor L. Torres and Torres Services, Inc. Records and other evidence indicate that Torres received at least $1.2 million dollars in exchange for his participation in the fraudulent scheme to manipulate the awarding of federal government contracts. These payments were made in the form of checks which were issued from a company owned or controlled by a co-conspirator and deposited into two of the Torreses personal bank accounts. These bank accounts have been identified as Bank of America under account number XXXXXX7702 and Texas State Bank under account number XXXXX0398.

During this time frame, Ignacio Torres invested in and purchased numerous pieces of real estate as well as made numerous payments on previously purchased real estate with the illegal proceeds of the above-described scheme. In addition to the purchase of the real estate, the Torreses purchased and/or owned three Mercedes Benz. It should be noted that during 2002 through 2004

---

invoice. None of the 13 invoices submitted mentioned the number of new drops installed or recovered drops removed.

the Torreses received payments from employers and the federal government of approximately $300,000.00.

In a consensually recorded conversation on September 15, 2003, the CW learned from Bill Strout that Ignacio Torres has been involved in illegal contract schemes for approximately six to seven years, which would indicate that Torres has been involved in this illegal conduct since 1998.

On or about August 12, 2003, a $50,000.00 check was deposited into the Torreses personal Bank of America account XXXXXX7702, from ECA, a business owned by a co-conspirator. Three days later, on August 15, 2003, the Torreses purchased Respondent Property and issued a check from their personal Bank of America account XXXXXX7702 in the amount of $1,597.11, which stated in the memo portion that it was for the "Seguin land payoff." The chain of title for Respondent Property is absent the recording of any Deed of Trust or any release of lien regarding the Torreses purchase of the Respondent Property, which is free and clear of any recorded liens. Therefore, the chain of title appears to indicate that the Respondent Property was purchased out right by the Torreses on August 15, 2003.

The Respondent Property was purchased with the proceeds of a Specified Unlawful Activity and was also involved in violations of Title 18 U.S.C. §§ 201, 371, 1341, 1343, 1956 and 1957, and thereby, shall be forfeited to the United States pursuant to Title 18 U.S.C. §§ 981 and 985.

## XI.
## DOCTRINE OF RELATION BACK

Pursuant to the provisions of Title 18 U.S.C. § 981(f), any and all right, title, and interest in the Respondent Property with all buildings, appurtenances, and improvements thereon, vested in the United States of America at the time said Respondent Property was in violation of those violations

as set forth above in this Verified Complaint for Forfeiture.

## XII.
## PRAYER

WHEREFORE, the United States of America prays as follows:

1. That notice issue according to the standard procedure of this Court citing that all persons having an interest in the above-described property may file a claim with the Clerk of the United States District Court, Western District of Texas, San Antonio Division, asserting such person's interest in the property in the manner set forth in the Supplemental Rules for Certain Admiralty and Maritime Claims not later than thirty (30) days after the date of service of the Verified Complaint for Forfeiture or, as applicable, not later than thirty (30) days after the date of final publication of notice of the filing of the complaint. A person asserting an interest shall file an answer to the Verified Complaint for Forfeiture not later than twenty (20) days after the date of the filing of the claim, as provided by Title 28, U.S.C., Rule C(6) of the Supplemental Rules for Certain Admiralty and Maritime Claims, Fed. R. Civ. P., and Title 18, U.S.C., § 983(a)(4)(A) and (B);

2. That United States Marshals Service for the Western District of Texas or any other authorized law enforcement officer or any other person or organization authorized by law shall post the Notice of Complaint for Forfeiture against the Respondent Property, in accordance with Title 28, U.S.C., Rule E(4)(b) of the Supplemental Rules for Certain Admiralty and Maritime Claims, Fed. R. Civ. P., and Title 18, U.S.C., § 985(c)(1)(B), by affixing a copy of the Notice of Complaint for Forfeiture in this action in a conspicuous place upon the premises and, if applicable, by leaving copies of the Notice of Complaint for Forfeiture and accompanying documents with the occupant of the premises, if any;

3. That judgment of forfeiture be decreed against the Respondent Property;

4. That upon final decree of forfeiture, the Respondent Property be disposed of in accordance with law; and

5. For costs and for such other and further relief to which Petitioner may be entitled.

Respectfully submitted,

JOHNNY SUTTON
United States Attorney

By: _____
DIANA CRUZ-ZAPATA
Assistant United States Attorney
601 N.W. Loop 410, Suite 600
San Antonio, Texas 78216
Tel: (210) 384-7040
Fax: (210) 384-7045
Texas State Bar No. 05196800

Attorneys for the United States of America

## VERIFICATION

STATE OF TEXAS            )
                          )
COUNTY OF BEXAR           )

Special Agent Gregory P. Pratt declares and says that:

1.   I am a Special Agent with the Federal Bureau of Investigation (FBI), San Antonio District Office, within the Western District of Texas, San Antonio Division, and am the investigative agent responsible for the accuracy of the information provided in this litigation;

2.   I have read the above Verified Complaint for Forfeiture and know the contents thereof; the information contained in the Verified Complaint for Forfeiture has been furnished by official government sources; and based on information and belief, the allegations contained in the Verified Complaint for Forfeiture are true.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the 21st day of December, 2005.

```
                              _____
                              Gregory P. Pratt, Special Agent
                              Federal Bureau of Investigation
                              San Antonio District Office
```

Subscribed and sworn to before me this 21st day of December, 2005.



BEVERLY J. WILLIAMS
MY COMMISSION EXPIRES
October 7, 2007

_____
Notary Public in and for the State of Texas

My Commission Expires: 10-7-07